# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| JAMES D. VAWTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:07-CV-19 JVB |
| | ) | |
| ALCOA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On September 30, 2008, this matter was referred to the Honorable Paul R. Cherry, United States Magistrate Judge, for a Report and Recommendation on (1) Plaintiff's Motion for Summary Judgment [DE 30]; (2) Defendant's Motion for Summary Judgment [DE 33]; (3) Plaintiff's Motion to Strike the Declaration of Michael Colt, and Portions of the Declarations of Jody Koontz and Pamela W. Leonard [DE 38]; and (4) Defendant's Motion to Strike [DE 47].

On October 21, 2008, Magistrate Judge Cherry issued a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [DE 79] on the instant motions. In the Report and Recommendation, Magistrate Judge Cherry recommended that the District Court: (1) grant Defendant's Motion for Summary Judgment [DE 33]; (2) deny Plaintiff's Motion for Summary Judgment [DE 30]; (3) deny as moot Plaintiff's Motion to Strike the Declaration of Michael Colt, and Portions of the Declarations of Jody Koontz and Pamela W. Leonard [DE 38]; and (4) deny as moot Defendant's Motion to Strike [DE 47].

On November 3, 2008, Plaintiff filed Objections to Magistrate Judge Cherry's Report and Recommendation [DE 89]. Defendant filed its Response to Plaintiff's Objections on November 10, 2008 [DE 92].

For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objections [DE 89]

and **ADOPTS** Magistrate Judge Cherry's Report and Recommendation [DE 79].

**A.     Standard of Review**

"The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b). After conducting a de novo review, the district court "may accept, reject, or modify the recommended decision." *Id*.

**B.     Material Facts**

Magistrate Judge Cherry set forth the following facts in his October 21, 2008, Report and Recommendation:

Plaintiff began his employment with Defendant on January 22, 1996, at Defendant's facility in Lafayette, Indiana. When Plaintiff first began his employment with Defendant, he occasionally worked on Sundays.

Between September and December of 1997, Plaintiff attended a religious course at his church, during which he determined that it was against his religious beliefs to work on Sundays. Because of Plaintiff's work schedule, he may have been required to work on Sundays, which would run contrary to his religious beliefs. Plaintiff first requested a religious accommodation from Defendant on October 17, 2005, by speaking to Defendant's Tube Mill Manager, Donald Thomas. Plaintiff requested that he be excused from working on Sundays in the future. Defendant denied this request, claiming that granting such a request would be unmanageable.

After the October 17, 2005 meeting, the Defendant and Plaintiff discussed alternative

accommodations, but were unsuccessful at reaching an agreeable accommodation. Plaintiff claims that Defendant did not meet again with Plaintiff until approximately two months after the meeting with Mr. Thomas. In the meantime, on November 21, 2005, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging religious discrimination by failure to accommodate. Defendant and Plaintiff never came to an agreement that Plaintiff could be excused from Sunday work.

During October 2005 and November 2005, Plaintiff was absent from work on six scheduled Sundays, resulting in Plaintiff having to participate in a one-on-one discussion with one of Defendant's supervisors on November 22, 2005.

Under Defendant's Attendance Policies in effect during the relevant time period in this litigation, an employee would generally accrue "events" or "points" for unscheduled absences. An employee who accumulated three or fewer events in a fixed calendar year under the Old Attendance Policy, or who accumulates three points within a rolling 182 calendar day period under the New Attendance Policy, was required to participate in a "one-on-one discussion" with his supervisor. The parties disagree about whether a one-on-one discussion by itself constitutes discipline. A one-on-one discussion is listed by the Defendant on its "Formal Discipline Report" under the heading of "Discipline" and becomes a part of Plaintiff's permanent personnel file.

However, Defendant's written Attendance Policy provides that a one-on-one discussion is conducted prior to the first step of discipline and is intended to notify the employee that further absences may warrant disciplinary action, discuss what is causing the absences, and offer assistance to help the individual avoid formal disciplinary action.

On May 20, 2006, Plaintiff had a one-on-one discussion with a supervisor because of

3

several unexcused Sunday absences in late April and early May. The May 20, 2006 one-on-one discussion was the last such discussion that Plaintiff participated in.

Aside from participating in one-on-one discussions, it is undisputed that Plaintiff was not otherwise disciplined for any absence on any Sunday he was scheduled to work. Plaintiff never received a warning, suspension, termination, or any other formal disciplinary action for any Sunday absence. Plaintiff never lost any wages or benefits, promotional opportunities, work assignments, overtime opportunities, or any other term or condition of employment.

Further, Plaintiff testified at his deposition that he has not actually worked on a Sunday since 1997. When Plaintiff has been scheduled to work on Sunday, he has been able to avoid working on that day by using Family Medical Leave Act ("FMLA") leave so that he could be off to care for his ill mother or by reporting off from work for other reasons. (Report and Recommendation at 3–5) (record citations omitted).

The Court adopts the facts as presented above and reflected in the Report and Recommendation.[1]

**C.     Applicable Law**

Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a)(1). Religion includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). A plaintiff

---

[1] Only those facts which are relevant to Plaintiff's ability to establish a prima facie case of religious discrimination for failure to accommodate were set forth in the Report and Recommendation.

alleging religious discrimination under Title VII must first establish a prima facie case. *Anderson v. U.S.F. Logistics (IMC), Inc*., 274 F.3d 470, 475 (7th Cir. 2001).

To establish a prima facie case of religious discrimination by failure to accommodate, a plaintiff must show that: (1) he follows a bona fide religious practice or observance that conflicts with an employment requirement; (2) he called the religious practice or observance to the employer's attention; and (3) the religious practice or observance was the basis for an adverse employment action. *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to present evidence proving either that it offered a reasonable accommodation to the employee which the employee did not accept, or that accommodation of a religious practice or observance would create an undue burden on the employer. *Wilburn v. Y.M.C.A. of Greater Indianapolis (Ransburg Branch)*, No. 1:05–cv–1917, 2007 WL 2752391, at *6 (S.D. Ind. Sept. 18, 2007) (citation omitted).

At issue in this case is the third prong of the prima facie case. In other words, the issue is whether Plaintiff was subjected to an adverse employment action.

An adverse employment action is one that "must materially alter the terms and conditions of employment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). An adverse employment action is an action that constitutes a "significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Adverse actions must be materially adverse to be actionable and must be more than a mere inconvenience or alteration of job responsibilities. *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 613 (7th Cir. 2001)

5

(citation omitted). Rather, an employee must show that there has been a quantitative or qualitative change in the terms or conditions of his employment. *De la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). Since adverse actions can come in many forms, a court must consider the facts of each particular situation when analyzing whether an adverse action is material. *Oest*, 240 F.3d at 613. Reprimands, warnings, and negative performance evaluations do not rise to the level of an adverse employment action. *Id*. ("Nor do we believe that the oral or written reprimands received by [the plaintiff] under the [defendant's] progressive discipline system can be considered, . . . as implicating sufficiently 'tangible job consequences' to constitute an independent basis of liability under Title VII."); *Sweeney v. West,* 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some tangible job consequence accompanying [the] reprimands, we decline to broaden the definition of adverse employment action to include them."); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d at 1118 (7th Cir. 2001) (holding that oral and written warnings did not constitute materially adverse employment actions).

**D.     The Report and Recommendation**

In the Report and Recommendation, Magistrate Judge Cherry found that Plaintiff could not establish the third prong of a prima facie case of religious discrimination by failure to accommodate, as he could not show that he suffered an adverse employment action. (Report and Recommendation at 8–13.)

In reaching his decision, Magistrate Judge Cherry considered the parties' arguments in light of Seventh Circuit case law which establishes that a threat of discipline is not enough to constitute an adverse employment action under Title VII. (Report and Recommendation at

10–13.) He further considered that even if a one-on-one discussion was part of Defendant's progressive discipline system and constituted the first step in that system, a one-on-one discussion would not be considered an adverse employment action that could satisfy the third prong of Plaintiff's prima facie case. (*Id.*)

In particular, Magistrate Judge Cherry considered Plaintiff's reliance on a decision from the Northern District of Illinois, *Rodriguez v. City of Chicago*, No. 95 C 5371, 1996 WL 22964 (N.D. Ill. Jan. 12, 1996), which is based on Ninth Circuit law, that a threat of termination or other adverse employment action is sufficient to establish the third prong of his prima facie case. (Report and Recommendation at 11–12.) In considering *Rodriguez*, Magistrate Judge Cherry concluded that Plaintiff failed to show that he suffered an adverse employment action because Seventh Circuit case law required more than a mere threat of discipline to satisfy the third prong of a prima facie case.[2]

**E.     Discussion**

Plaintiff objects to Magistrate Judge Cherry's finding. Specifically, Plaintiff asserts that the Seventh Circuit has not directly addressed the holding in *Rodriguez* and the Seventh Circuit cases cited by Magistrate Judge Cherry are neither religious accommodation nor religious discrimination cases. (Objections at 1–2.) Plaintiff points out that Defendant agrees that the Seventh Circuit has never specifically addressed the issue of whether a mere threat of discipline

---

[2]Because Magistrate Judge Cherry found that Plaintiff had failed to establish a prima facie case of religious discrimination by failure to accommodate, he did not address the issue of whether Defendant offered Plaintiff a reasonable accommodation. (Report and Recommendation at 13.) Furthermore, Magistrate Judge Cherry recommended that the related Motions to Strike [DE 38 and 47] be denied as moot because they addressed only the issue of reasonable accommodation. (*Id.* at 13–14.)

or discharge is sufficient to establish a prima facie case in a religious accommodation case. (*Id.* at 3.) He also states that the *Rodriguez* holding has been cited favorably in *Silk v. City of Chicago*, No. 95 C 0143, 1996 WL 312074 (N.D. Ill. June 4, 1996), another Northern District of Illinois district court decision. (*Id.*) Plaintiff also relies on two New York district court cases,[3] which cite *Rodriguez*, as support for his position. (*Id.*)

As Magistrate Judge Cherry correctly found, in the context of a Title VII case alleging failure to accommodate religious practices, the Seventh Circuit has squarely held that a plaintiff must have suffered an adverse employment action in order to establish a prima facie case. Magistrate Judge Cherry properly relied on Seventh Circuit precedent in determining that Plaintiff had, in fact, not been subjected to an adverse employment action because he had not lost any wages or benefits, promotional opportunities, work assignments, overtime opportunities, or any other term, condition, or privilege of employment. Therefore, in reaching his conclusion, Magistrate Judge Cherry thoroughly evaluated the record in this case and determined that Plaintiff had never experienced any negative alteration in the terms of his employment that would fall within any "actionable, materially adverse employment actions" as contemplated by the Seventh Circuit, which includes a loss in wealth or income, an impact on his career opportunities, or any change to his working conditions. *See Nichols v. So. Ill. Univ.–Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (delineating the "three general categories" of adverse employment actions).

While Plaintiff asserts that the mere threat of discipline or the possibility that discipline might occur some time in the future is sufficient to establish a Title VII religious discrimination

---

[3]Plaintiff cites to *Pozo v. J&J Hotel Co.*, No. 06 Civ. 2004, 2007 WL 1376403 (S.D.N.Y. May 10, 2007) and *Khan v. Federal Reserve Bank*, No. 02 Civ. 8893, 2005 WL 273027 (S.D.N.Y. Feb. 2, 2005).

claim, Magistrate Judge Cherry found that his assertion was not supported by controlling authority. (Report and Recommendation at 11–12.) He observed that even though *Rodriguez* does support Plaintiff's argument, the "case's holding that a threat of discharge is sufficient to constitute an adverse employment action under the third prong of Plaintiff's prima facie case was based on Ninth Circuit case law." (*Id.*) Magistrate Judge Cherry went on to note that "[s]ince *Rodriguez*, the Seventh Circuit has required more than a mere threat of discipline in order for a plaintiff to show an adverse employment action." (*Id*. at 12.) In considering Plaintiff's one-on-one discussions, Magistrate Judge Cherry found that "even if [they] became a negative part of Plaintiff's permanent personnel file," they were "still insufficient to constitute an adverse employment action," because under Seventh Circuit case law, "[n]egative performance evaluations, standing alone, are not cognizable adverse employment actions." (*Id.*) In concluding that a threat of discipline or some other type of adverse employment action was not sufficient to establish a prima facie case of discrimination under Title VII, Magistrate Judge Cherry properly relied on Seventh Circuit case law which constitutes binding precedent. Magistrate Judge Cherry, therefore, was not required to follow *Rodriguez* or the other cases Plaintiff cites to support his position that a threat of discipline is sufficient to constitute an adverse employment action.

Therefore, Plaintiff failed to show that he was subjected to an adverse employment action under Seventh Circuit case law. Accordingly, no genuine issues of material fact exist as to whether Plaintiff suffered an adverse employment action sufficient to satisfy the third prong of a

9

prima facie case of religious discrimination.[4]

**F.     Conclusion**

The Court **OVERRULES** Plaintiff's Objections [DE 89] and **ADOPTS** the Magistrate Judge's Report and Recommendation [DE 79].  Accordingly, Defendant's Motion for Summary Judgment [DE 33] is **GRANTED**; (2) Plaintiff's Motion for Summary Judgment [DE 30] is **DENIED**; (3) Plaintiff's Motion to Strike the Declaration of Michael Colt, and Portions of the Declarations of Jody Koontz and Pamela W. Leonard [DE 38] is **DENIED AS MOOT**; and (4) Defendant's Motion to Strike [DE 47] is **DENIED AS MOOT**.[5]

SO ORDERED on December 10, 2008.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
HAMMOND DIVISION

---

[4] Plaintiff asserts that he was required to use FMLA leave to avoid unexcused absences and, presumably, potential discipline. (Report and Recommendation at 13 n. 3). However, as Magistrate Judge Cherry noted the record does not support that Defendant ever required Plaintiff to use FMLA leave and Plaintiff admitted that he took such leave to take care of his mother. (*Id*.)

[5] Defendant also requests that the Court award costs it incurred in defending this action. While the Court does not address the costs issue at this time, Defendant may proceed pursuant to Federal Rule of Civil Procedure 54(d) to obtain its requested costs.